# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7119 | **DATE** | 7/18/2001 |
| **CASE TITLE** | AMSTED INDUSTRIES, INC. vs. ABC-NACO, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Defendant ABC-NACO, Inc.'s motions for summary judgment [19-1] [28-1] are denied. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 19 2001 date docketed | 51 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 7/18/2001 date mailed notice | |
| sb | courtroom deputy's initials | 01 JUL 18 PM 5: 49 Date/time received in central Clerk's Office | pg mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AMSTED INDUSTRIES, INC | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 7119 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| ABC-NACO, INC. | ) | |
| Defendants. | ) | |

**DOCKETED**
**JUL 1 9 2001**

## MEMORANDUM OPINION AND ORDER

Amsted Industries, Inc. ("Amsted") sues ABC-NACO, Inc. ("ABC-NACO") for infringement of U.S. Patent Nos. 5,752,564 ("the '564 patent") and 5,954,114 ("the '114 patent") (collectively "the patents"). ABC-NACO counterclaims for declaratory judgment of noninfringement, unenforceability, and invalidity of the patents under 35 U.S.C. §§ 101 ("§ 101") and 112 ("§ 112"). ABC-NACO moves for summary judgment on the issue of patent invalidity, pursuant to Fed.R.Civ.P. 56.[1]

## BACKGROUND

Amsted is a Delaware corporation with its principal place of business in Chicago, Illinois. ABC-NACO is a Delaware corporation with its principal place of business in Downers Grove, Illinois. Both companies manufacture and sell sideframes and bolsters used in railway trucks.

---

[1] ABC-NACO filed two separate summary judgment motions on the issue of patent validity. The court disfavors piecemeal approaches to litigation. *See Malec v. Sanford*, 191 F.R.D. 581, 590 (N.D. Ill. 2000). However, the court will address the motions together rather than delay proceedings by dismissing the motions without prejudice.

-1-

2Sideframes and bolsters are cast using cores. Cores define the inside surfaces of the sideframes and bolsters.

The '564 patent is entitled "Railway Truck Castings and Methods and Cores for Making Castings." The '114 patent, a continuation of the '564 patent, is entitled "Method of Making Railway Truck Bolsters." In describing the field of invention, the patents state, "The present invention relates to railway trucks and other casting products, methods of making such castings, and to cores used in making such metal castings." Plaintiff's Response ("Pl. Resp."), Ex. 1, col. 1; Ex. 2, col. 1. "[T]he present invention reduces the number of cores needed to make sideframes and bolsters, to improve the efficiency of production to produce sideframes and bolsters of consistent quality." *Id.* at Ex. 1, col. 2; Ex. 2, col. 2. The invention reduces the number of cores needed for making a portion of the sideframe to four, namely two end cores, a center core, and a bottom core. *Id.* at p. 4. The invention reduces the number of cores needed to make a portion of the bolster to three, namely two end cores and a center core. Kuang Y. Lin ("Lin") was the examiner during the prosecution of both patent applications.

## DISCUSSION

### I.  Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing

there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## II. Applicable law

Inventions are patentable only if they fall within one of the following statutory classes of subject matter: (1) process; (2) machine; (3) manufacture; or (4) composition of matter. 35 U.S.C. § 101. The first prong refers to "arts," and the latter three prongs refer to physical items or products. *Ex Parte Lyell*, 17 U.S.P.Q.2d 1548, 1551 (1990) (internal citations omitted). The latter three classes "all differ fundamentally in nature from a process." *Id.* (internal citations omitted).

Every patent is presumed valid. 35 U.S.C. § 282. Similarly, patents are presumed to comply with § 101 and §112. *Northern Telecom, Inc. v. Datapoint Corporation*, 908 F.2d 931, 941 (Fed. Cir. 1990); *Arrhythmia Research Technology, Inc. v. Corazonix Corporation*, 958 F.2d 1053, 1056 (Fed. Cir. 1992). The challenging party has the burden of proving invalidity with clear and convincing evidence. *Id*; *Transmatic, Inc. v. Gulton Industries, Inc.*, 53 F.3d 1270, 1275 (Fed. Cir. 1995).

## III. Definiteness

A claim must state what "the applicant regards as his invention . . . with sufficient

particularity and distinctness (*i.e.*, the claim must be sufficiently 'definite')." §112; *Solomon v. Kimberly-Clark Corporation,* 216 F.3d 1372, 1377 (Fed. Cir. 2000). Claim definiteness is a matter of law. *Id*; *Exxon Research and Engineering Co. v. United States,* 46 Fed.Cl. 278, 281 (Ct. Cl. 2000) ("Within the context of discussing claim construction . . . there are no questions of fact"). "Determining whether a claim is definite requires an analysis of whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *Solomon,* 216 F.3d at 1378. In other words, one skilled in the art must be "reasonably apprise[d]" of the scope of the invention. *Id.* A court evaluating patent definiteness first considers intrinsic evidence, namely the claims themselves. When the intrinsic evidence is ambiguous, courts examine extrinsic evidence. *Exxon Research and Engineering Co.,* 46 Fed.Cl. 278 at 283-84.

ABC-NACO contends claims 1-39 of the '564 patent and claims 1-20 of the '114 patent are indefinite because each claim references two statutory classes of invention. The company relies in part upon *Ex Parte Lyell,* 17 U.S.P.Q.2d 1548. *Lyell* holds that a claim "which purports to be both an apparatus and a process in a single claim, is ambiguous and properly rejected under 35 U.S.C. [§] 112." *Id.* at 1552. However, the *Lyell* claim is distinguishable. The claim covered "an automatic transmission tool in the form of a workstand *and* method for using the same . . ." (emphasis added). *Id.* at 1549. In contrast, Amsted claims a new method for making sideframes and bolsters. The new method uses a smaller structural core configuration, which is described within the method claims. This core configuration, unlike the apparatus in *Lyell,* cannot be separated from the method of production. Describing the core configuration is necessary to fully describe the claimed process. Claims that appear to be "hybrid" are permitted in U.S. patent

practice when one statutory class (*e.g.*, a product) is merely used to define the claimed statutory class (*e.g.*, a process). *Id.* at 1552.[2]

ABC-NACO further contends that claims two and three of the '564 patent are indefinite because they contain wording lacking a proper antecedent basis and clear scope.[3] The relevant portion of claim two reads:

> In a method of making a cast metal sideframe for a railway car truck, the sideframe being of the type having . . . [description of sideframe] . . ., the method comprising the steps of providing **cores** to define the interior of the sideframe, . . . placing the **cores** in the mold cavity, pouring molten metal into the mold to form a casting, removing the casting from the mold, and separating the casting from **the core**, the improvement wherein the **cores** include a one-piece center core body . . . Pl. Resp. Ex. 1, column 25, line 61 to column 26, line 20 (emphasis added).

The relevant portion of claim 3 reads:

> [A] pair of core ends, each end core being one-piece and comprising a core body having a pedestal portion, an integral diagonal portion for defining an interior surface of the diagonal portion of the tension member, an integral column portion for defining an interior surface of the column, and integral **top member portions** for defining interior surfaces of the parts of the top member, a side window support between **the top portion**, diagonal portion and column portions of the core body, the side window support having a flat surface beyond the surfaces of the top portion, tension portion and column portion of the one-piece end core body . . . Pl. Resp. Ex. 1 (emphasis added).

ABC-NACO points to claim two's recitation of "the core" and claim three's recitation of "top member portions" and "the top portion." The company relies upon patent drafting rules providing that an indefinite article (*e.g.*, "a" or "an") is used to introduce an element, whereas a

---

[2]ABC-NACO's arguments pertaining to 35 U.S.C. § 101 are moot because they depend on a finding that Amsted improperly combined two statutory classes of invention.

[3]ABC-NACO contends claim four is invalid because it is dependent on claim three.

-5-

definite article (*e.g.*, "the" or "said") is used to indicate that an element was referenced earlier. §
112; Manual of Patent Examining Procedure ("Manual"), § 706.03(e) (6th ed. 1995).
Specifically, ABC-NACO contends the first reference to a singular core and the first reference to
"top portion" should have been preceded by "a" rather than "the." ABC-NACO's antecedent
arguments lacks merit.

There is a proper antecedent basis for "the core" because this phrase follows numerous
recitations of "cores." "Inherent components of elements recited have antecedent basis in the
recitation of the components themselves." Manual, § 2173.05(e) (7th ed. 2000) at 2100-150.

In addition, failure to use an explicit antecedent does not render a claim invalid if those
skilled in the art could reasonably ascertain the scope of the claim. *Id. See also Slimfold
Manufacturing. Company v. Kinkead Properties, Inc.*, 1 U.S.P.Q.2d 1563, 1566
(Fed. Cir. 1987) (existence of an antecedent basis can be found by implication). Amsted
acknowledges that "the core" should have read "the cores," but argues that a person skilled in the
art would have interpreted the phrase as having the intended meaning. ABC-NACO contends
"the core" could refer to a new element because reducing the number of cores is a key feature of
Amsted's invention. In effect, ABC-NACO asserts that one skilled in the art might think
Amsted's new method involves welding cores together in the mold cavity as part of the casting
process. However, the patent preamble does not suggest the cores are reduced by melting
multiple cores into a single core. The patent merely claims a new casting method that uses fewer
cores throughout the casting process. ABC-NACO has presented no evidence to show that a
person skilled in the art would have a reasonable basis for concluding that melting cores together
in the mold cavity might be part of the casting process. In fact, ABC-NACO's own expert was

not aware of any such method. Defendant's Motion For Summary Judgment, Affidavit of Doug Smith at ¶ 6. Accordingly, a person skilled in the art could reasonably ascertain that "the core" recitation in claim two refers to the cores previously discussed.

Claim three's "top member portions" and "top member portion" recitations would not confuse a person skilled in the art about its scope. "Top member portions," "top portion," and "top member portion" are all identified as element 92 throughout the patent. *Id.* at column 9, lines 47-62 and column 13, lines 50-56. Element 92 is identified in Figure 9 as the top of the sideframe end core. *Id.* at sheet 4.[4]

Extrinsic evidence offers further support for the patents' definiteness. Amsted offers the affidavit of Dr. James G. Conley, who states the patent claims are definite method claims. Pl. Resp., Ex. 3 at ¶ 9. Furthermore, it is undisputed that patent examiner Lin identified Amsted's claims as process claims and found them to be definite. *See American Hoist & Derrick Company v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) (the Patent Office is presumed to do its job). ABC-NACO fails to establish with clear and convincing evidence that one skilled in the art would not understand the bounds of Amsted's claims.

## IV. Structural claims

ABC-NACO contends Amsted's method claims are invalid because the claims describe old methods and rely solely on the core's structural configuration for patentability. It is generally true that "patentability of a method claim must rest on the method steps recited, not on the structure used, unless the structure affects the method steps." *Leesona Corporation v. United States*, 530 F.2d 896, 908 (Ct. Cl. 1976).

---

[4] ABC-NACO's enablement arguments are moot.

Amsted offers evidence to show the new core structural configuration affects the method steps in several ways. First, the new configuration increases production rate by "reducing the preparation time of aligning the cores, obviating the need for core chaplets or other internal support structures to hold the cores in place." Pl. Resp., Ex. 3 at ¶¶ 7-8. In addition, the new configuration simplifies the process of "pouring molten metal into the mold to form a sideframe casting." *Id.* at ¶ 8. In effect, the core configuration creates a new process. *See In re Ochiai*, 71 F.3d 1565, 1570, n. 5. (Fed. Cir. 1995) (process is new when it includes the use of a new acid); *Ex Parte Wagner*, 88 U.S.P.Q. 217, 220 (C.C.P.A. 1950) ("Many processes which are old in a procedural sense become new when, by the use of a different agent, a new result is accomplished"). Accordingly, ABC-NACO has failed to prove with clear and convincing evidence that the patentability of Amsted's method claims are based on the structural core configuration rather than the method itself.

## CONCLUSION

ABC-NACO's motions for summary judgment are denied.

July 18, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge